UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAREESE YOUNG and TRACI HILL,
formerly know as TRACI ROSS ,

        Plaintiffs, on behalf of themselves
        and other similarly situated

v.

BMG LoansAtWork LLC,
EGL US, LLC and
BMG MONEY INC.,

        Defendants.

Case No. 2:24-cv-10758-SJM-KGA

Hon. Stephen J. Murphy

Mag. Judge Kimberly G. Altman

CLASS ACTION

_____/

Sean R. O'Mara (P76140)
O'Mara Law Firm, PC.
Attorney for Plaintiffs
24001 Greater Mack Avenue
Saint Clair Shores, MI 48080
P: (586) 200-6404
F: (586) 445-2399
omaralawfirmpc@gmail.com

Stephanie L. Sweitzer (P66376)
MORGAN, LEWIS & BOCKIUS LLP
Attorney for Defendants
110 N. Wacker Dr., Suite 2800
Chicago, IL 60606
Tel: 312.324.1000
Fax: 312.324.1001
stephanie.sweitzer@morganlewis.com

Clay M. Carlton
(FL Bar No. 85767)
Justin Stern
(FL Bar No. 1010139)
600 Brickell Ave., Ste. 1600
Miami, FL 33131
Tel: 305.415.3000
clay.carlton@morganlewis.com
justin.stern@morganlewis.com

_____/

1

## PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs, Chareese Young and Traci Hill, f/k/a Traci Hill , by and through their attorney of record, brings this Amended Complaint of right pursuant to FCRP 15(a), Defendants filed their 12(b) motion on April 1, 2024 and this amendment is filed within 21 days of that pleading. Plaintiffs state as follows:

## INTRODUCTION

1.      Plaintiffs Chareese Young and Traci Traci Hill, f/k/a Traci Hill , bring this action to secure redress from loans secured from Defendant BMG LoansAtWork LLC, EGL US, LLC and BMG Money Incorporated for violations of Michigan's Credit Reform Act (MCL §445.1851 *et seq.,* Michigan's Regulatory Loan Act (MCL 493.1 et seq.), and/or violations of Michigan Consumer Protection Act ("MCPA") MCL 445.901 *et seq,*. Plaintiffs also seek declaratory and injunctive relief.

## JURISDICTION AND VENUE

2.  This case was removed pursuant to 28 U.S.C. §§ 1332(d) by Defendants, and Plaintiffs concur that this Courts jurisdiction is proper in that there is minimum diversity between the parties. The added Defendant EGL US, LLC does affect jurisdiction in that it is not a Michigan citizen and is believed to have a primary business location identical to the other named Defendants.

2

PARTIES

3.      At all relevant times, Plaintiff Chareese Young is and was a resident of Saint Clair Shores, Michigan, located in Macomb County.

4.      At all relevant times, Plaintiff Traci Hill, f/k/a Traci Hill is and was a resident of Clinton township, Michigan located in Macomb County. Traci Hill took her maiden name after her divorce.

5.      "Plaintiffs" will refer to both Plaintiff Chareese Young and Plaintiff Traci Hill, while individually they will be referred to as Plaintiff when stating specific facts to each.

6.      Defendant BMG LoansAtWork LLC advertises and offers its loans to consumers         through        the         internet        website        at https://www.bmgmoney.com/loansatwork.   Defendant   directly   and   indirectly transacts or has transacted business in Michigan for profit, signing Michigan residents up for its loans.

7.      Defendant EGL US, LLC is the 100% owner of Defendant LoansAtWork LLC and both have a primary business address of 444 Brickell Avenue, Suite 250, Miami , FL 33131. *See* (Defendant BMG LoansAtWork Amended Disclosure Statement; ECF No. 9).

8.      Defendant BMG LoansAtWork LLC is a Delaware limited liability company with its primary address of 444 Brickell Avenue, Suite 250, Miami , FL 33131.

9.     Defendant BMG Money Incorporated is a corporation, with its primary business address 444 Brickell Avenue, Suite 250, Miami, FL 33131.

10.    Defendant BMG Money Incorporated owns and operates the website for loans initiated by consumers with Defendant BMG LoansAtWork LLC, its primary business location is also 444 Brickell Avenue, Suite 250, Miami, FL 33131, and upon information and belief, both Defendants are owned and operated by the same persons or entities, and each is the altered ego of the other.

11.    By example, the website www.bmgmoney.com states in its compliance page the various states where BMG Money Inc. is licensed, but in Michigan Defendant BMG LoansAtWork LLC held the regulatory loan license which it surrendered sometime in 2023.

12.    Herein "Defendants" will refer to both Defendant BMG LoansAtWork LLC, Defendant EGL US, LLC as 100% owner of BMG LoansAtWork LLC, and Defendant BMG Money Incorporated.

13.    None Defendants are a credit union, or a state or nationally chartered bank but did have a regulatory loan license through BMG LoansAtWork LLC in the State of Michigan that was surrendered sometime in 2023.

## FACTS

14.    Defendants through Defendant BMG LoansAtWork LLC acted as a regulated lender under Michigan's Regulatory Loan Act until sometime in 2023.

15.     Under Michigan's regulatory Loan Act Defendants were obligated to adhere to the requirements of the Act, specifically to not charge interest or fees exceeding 25% per annum.

16.     Defendants general practice is not to lend actual credit lines, but instead make small direct loans in the form of promissory notes to individuals and having individuals set up specific bank accounts with United Bank and Capital Trust Company, based out of Kentucky, to have their paychecks directly deposited into.

17.     Defendants loan individuals' small loans and directly takes payment from individuals pay checks that are deposited into the specific accounts with United Bank and Capital Trust Company, Defendants make these individuals sign bi-weekly payment transfer forms authorizing payment directly to Defendants.

18.     Defendants practice is not to lend credit but instead effectuates direct loans and promissory notes with individuals it contracts with.

19.     Defendants practice is not a credit agreement or credit line directly governed Michigan's Credit Reform Act, but instead a loan governed more broadly under the Regulatory Loan Act and MCL 493.13 which specifically forbids a regulated lender from obligating an individual either directly or indirectly under more than one loan contract at the same time. Regardless Regulated lenders are not to charge an interest rate in excess of Michigan's Credit Reform Act on such loans.

20.    Michigan's Regulatory Loan Act states clearly that "Charges on loans made under this act shall not be paid, deducted, or received in advance, or compounded". *See* MCL 493.13.

21.    Michigan's Credit Reform Act and states that the rate of interest shall not to exceed 25% per annum and the interest or finance charge that is calculated on the principal balance shall be computed only on the basis of the unpaid balance.

22.    Mich. Comp. Laws § 493.71 incorporates the interest rate prescribed in the Credit Reform Act, Mich. Comp. Laws § 445.1854(1), under the Regulatory loan act and Michigan's Credit Reform Act, each individual loan must not exceed 25% simple interest and payment must be applied to principle with interest only accruing at 25% per annum based upon the actual principle owed.

23.    Defendants actively attempt to get consumers to refinance existing loans with them, sending them deceptive email notifications claiming that refinance will qualify them for greater loan amounts and improve payment terms with lower interest.

24.    The reality is that the refinancing of consumer loans neither improves a consumer interest rate but in fact greatly increasing both the interest and payment terms.

25.     This is done via email, with a notification stating that they will "qualify for greater loan amounts and/or improve my payment terms with lower interest rates". *See* Ex. 1 (Traci Hill Affidavit at pg. 1 & pg. 5)

SPECIFIC FACTS AS TO PLAINTFF CHAREESE YOUNG

26.     Plaintiff Chareese Young entered into a loan with Defendant on or about March 2, 2022 for $2000.

27.     At the time Defendants through BMG LoansAtWork LLC held a regulatory loan license.

28.     The interest on this loan was in the amount of $320.54 dollars.

29.     After making approximately 5 payments, Defendants induced Plaintiff to refinance her loan through notifications on their online account system with Plaintiff.

30.     The "refinanced" loan funded Plaintiff only $1294.37, deducting her prior note balance which included interest of the prior note, and charged new interest in the amount of $693.33 based upon the total loan amount of $3000.

31.     The prior loan balance of $1755.83, which included interest already charged minus Plaintiff's payments, was deducted from the amount actually funded Plaintiff but not applied to her principal when calculating the interest of the "refinance loan".

32.     Defendants practice under this "refinancing scheme" compounds interest and calculates interest on a grossly inflated amount when calculating the "refinanced loan", payment towards the actual principal are ignored.

33.    Defendants obligated Plaintiff under the second loan with fees and interest accrued from the first loan in violation Michigan's Credit Reform Act (MCL §445.1851 *et seq.,* Michigan's Regulatory Loan Act (MCL 493.1 et seq.), the deducted amount from the prior loans when funding the refinanced loans inflates the effective interest rate well in excess of the 25% per annum allowed.

34.    Plaintiff having been charged $320.54 in interest on her first loan, was then induced to "refinance", receiving $1294.37 on her refinance loan. That newer loan charged interest in the amount of $693.33. *See attached* Ex. 2 (Chareese Young Loan Agreements)

35.    This practice compounds interest, and charges interest irrespective of the actual principal and payments made, and makes the effective interest rate in violation of Michigan's Credit Reform Act.

36.    Defendants practice of inducing consumers to refinance constitutes a deceptive practice under the MCPA.

37.    Plaintiff's loan on May 14, 2022, was $1294.37, this was the amount directly "loaned" to Plaintiff.

38.    Defendants' practices resulted in compounding interest, deducting the prior loans that had already charged interest, obligating Plaintiff under more than one loan, and charging an effective interest rate grossly in excess of 25%: all in violation of

Michigan's Credit Reform Act (MCL §445.1851 *et seq.,* Michigan's Regulatory Loan Act (MCL 493.1 et seq).

39.     The effective rate of interest violated the amount Defendants per annum maximum allowed as a regulated lender of 25%.

40.     Plaintiff's loan was obtained for personal, family and household purposes. The loan was made in the course of trade and commerce.

### SPECIFIC FACTS AS TO PLAINTFF TRACI HILL F/K/A TRACI HILL

41.     Plaintiffs repeats and re-alleges all prior paragraphs as if fully set forth herein.

42.     Plaintiff Traci Hill originally entered into a loan agreement with Defendants in 2019 for $2000, upon information and belief this agreement is in Defendants possession.

43.     Plaintiff Traci Hill was induced to refinance her original loan numerous times with Defendants.

44.     The unconscionable result of the Defendants practice of "refinancing" is clearly seen in the final loan agreement between Traci Hill and Defendants in April of 2021. *See* attached Ex.3 (Loan Agreements – Traci Hill).

45.     Ms. Hill's initial note with Defendants was in March of 2019, this initial loan was for $2000. Here payment plan initially was also $95 to be paid bi-weekly.

46.     This bi-weekly payment plan started on April 19, 2019. After making payments on this first loan, Ms. Hill was induced on Defendants' website to refinance, she did this online. *See* Ex. 1 (Hill  Affidavit).

47.     Her new August 9, 2019 refinance loan funded her 1797.59 of a $3000 loan, with $ 1,251.41 being retained to pay off the prior note, the bi-weekly payment of $95 remained and her new liability increased to $3,692.12 with $692.12 being of a "finance charge".

48.     This cycle repeated in approximately every 4 months or 8 payments are made. Ms. Hill after making bi-weekly payments on this note, again refinanced in December of 2019.

49.     This note was for $4000, to which she received only $1693.97, $2,355.03 was retained to pay off the prior balance, her new liability increased to $5,276.68. See ECF

50.     Yet again, Ms Hill and Defendants "refinance" the December 2019 loan in March of 2020.

51.     This refinanced loan for $5000 only funded Ms. Hill  $1,339.79, $3709.21 was retained to pay off her former loan, her liability increased to $6,098.75 and her bi-weekly payments were increased to $155.

52.     This loan, again after bi-weekly payments of $155 this note was refinanced on June 26, 2020. This new $6000 note only funded Ms. Hill $1,632.97, her bi-weekly payment remained at $155, her new liability increased to $7667.60.

53.     Like clockwork, this loan after 8 payments was again refinanced on October 2, 2020. This new $7000 note only directly financed Ms Hill $1550.86, with $5,489.32 being applied to her former note.

54.     Again, on January 8, 2021, after another 8 payments Ms Hill refinance this note, this $8000 note only funded Ms Hill $1484, with $6556 being retained.

55.     Finaly, after another 8 payments, Ms Hill executed her final note with Defendants on April 16, 2021. This note only funded Ms Hill $416.13, $7623.87 was retained to pay off her prior balance from the January 2021 note.

56.     Her account with Defendants was increased to $11,292.09, with $3292.09 of interest being applied. *See attached* Ex. 3 at pg.

57.     Under this agreement, Plaintiff Traci Hill received $416.13, the interest charged up front on this loan was $3,292.09, ballooning her account to $11,292.09.

58.     Defendants practice of charging interest, deducting the prior loans from the amount to be funded and charging the current interest on the newly "refinanced loan" based upon the new higher loan persisted.

59.   Plaintiff was charged interest on every refinancing transaction with Defendants, every time the new loan subsumed the prior loan with charged interest and was deducted from the amount actually financed to Plaintiff.

60.   The ending result was $416.13 being funded to Plaintiff, with $7623.87 of this "refinanced" loan being retained by Defendants.

61.   Interest was again charged based upon the totality of the new loan while simultaneously deducting the prior interest which had already been compounded multiple times through multiple "refinancing" of prior loans.

62.   The effective interest rate of the final refinanced loan results in a rate exceeding 25% per annum.

63.   Plaintiff Ms Hill made approximately 17-18 payments to Defendants at $95 being bi-weekly paid out of her pay checks in 2019. *See* Ex. 1 (Hill Affidavit).

64.    Ms Hill paid $3610 to Defendants in 2020 with 7 payments allotted at $95 per pay check and 19 payments being allotted at $155 per pay check. *See attached* (Ex. 1 at pg.3).

65.   Ms Hill  paid a total of $1085 to Defendants in 2021. *See attached* (Ex.1 at pg. 4).

66.   The totality of the Defendants scheme as alleged resulted in less than two years, with Ms Hill making over $6000 in payments, being directly funded

11,590.13, the final note she was to owe was $11,292.09 with only $376.13 being directly funded to her.

67.    The total cost of the refinanced loans resulted in grossly exceeding 25% per annum.

68.    In adding the payments made and adding it to the total amount claimed owed on the final note, the $11,590.13 directly funded Ms Hill  cost her over $17,292.02 in less than two years. The functional interest rate excessively exceeds 25% per annum.

69.    Defendants through a course of two years charged and a violated the legally allowable interest under Michigan's Credit Reform Act exceeding 25% per annum.

70.    Plaintiff's loans with Defendants Plaintiff's loan were obtained for personal, family and household purposes. The loans were made in the course of trade and commerce.

## COUNT I.
## Violations of Michigan's Credit Reform Act

71.    Plaintiffs repeats and  re-allege all prior paragraphs as if fully set forth herein.

72.    For the time period Defendants was a regulated lender through BMG LoansAtWork LLC in Michigan it could not charge, collect, and receive any rate of interest or finance charge for an extension of credit not to exceed 25% per annum.

73.    The distinction between interest or finance charges does not matter under Michigan's Credit Reform Act. A regulated lender may charge, collect, and receive

any rate of interest or finance charge for an extension of credit not to exceed 25% per annum. *See* MCL 445.1854.

74.    Defendants also could not compound interest or receive and charge interest in advance nor deduct prior interest.

75.    Further, Defendants could not directly or indirectly obligate individuals to more than one under more than one loan contract at the same time.

76.    Defendants violated Michigan's Credit Reform Act by:

    i.  Charging an effective interest rate in violation of MCL 445.1854;

    ii.  Obligating Plaintiff under multiple loans violation of Michigan's Credit Reform Act (MCL §445.1851 *et seq.,* Michigan's Regulatory Loan Act (MCL 493.1 *et seq*);

    iii.  Failed to computed interest only on the basis of the unpaid balance, instead charging and compounding interest through its "refinancing" of prior loans and deducting the prior loan balances from prior notes;

    iv.  Charging a grossly excessive price for the services provided;

    v.  Such other violations as may be determined upon further investigation and discovery.

WHEREFORE, Plaintiffs request that this Court:

(a) Declare judgment that a method, act, or practice of Defendants is a violation of this act.

(b) Enjoin Defendants from the practices alleged in this complaint.

(c) Order all actual and statutory damages, including all reasonable attorney fees and the costs in connection with bringing an action under this act if the regulated lender is found to have violated this act.

## COUNT II.
### Violations of the Michigan Consumer Protection Act

77.     Plaintiffs repeats and  re-alleges all prior paragraphs as if fully set forth herein.

78.     The transaction complained of herein constitutes "trade or commerce" as defined in the Michigan Consumer Protection Act.

79.     Defendants through email notifications deceptively induced consumers, including Plaintiffs, to refinance their prior loans with Defendants.

80.     Defendants inducements promised lower rates of interest and better payment terms.

81.     Defendants failed to inform consumers that their interest and payment terms would increase significantly under this refinancing scheme.

82.     In the course of transitions which are the subject of this lawsuit, Defendants engaged in the following unfair and deceptive methods, acts or practices:

    i. Caused the probability of confusion or misunderstanding as to the legal rights, obligations or remedies of a party to a transaction;

    ii. Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

    iii. Charging a grossly excessive price for the services provided;

    iv. Such other violations as may be determined upon further investigation and discovery.

WHEREFORE, Plaintiffs request that this Court:

(a) Declare judgment that a method, act, or practice of Defendants is a violation of this act.

(b) Enjoin Defendants from the practices alleged in this complaint.

(c) Order all actual and statutory damages, including all reasonable attorney fees and the costs in connection with bringing an action under this act if the regulated lender is found to have violated this act.

## CLASS ALLEGATIONS UNDER MCL § 445.1861

83.    Plaintiffs repeat and re-allege all prior paragraphs as if fully set forth herein.

84.    Plaintiffs bring this claim on behalf of a class.

85.     The class consists of all individuals within the state of Michigan who entered

into loan agreements with Defendants who refinanced loans with Defendants at any

time date between six years prior to the filing of this action.

86.     The class is so numerous that joinder of all members is not practical.

87.     There are at least 100 Michigan consumers whom contracted with Defendants

and obtained loans from Defendants through refinancing resulting in exceeding the

legal rate allowed and compounding of interest.

88.     The common scheme and questions of law are common to the class members

and common questions predominate over any questions relating to individual class

members.

89.     The claims of the representative parties are typical of the class and are aligned

with and fairly represent the claims of the class they seek to represent.

WHEREFORE, Plaintiffs on behalf of themselves and others similarly situated

requests the Court to:

    I.     Enter a judgement declaring Defendants actions unlawful under MCL §

          445.1851, *et seq* and MCL 445.1861.

    II.    Enjoin the Defendants from engaging in practice alleged exceeding the

          legal rate allowed and/or compounding of interest;

    III.   Order a disgorgement of any profits gained as a result of Defendant's

          violations under the Michigan's Credit Reform Act;

IV.     Order Defendants to pay Plaintiffs and all other persons damages to which

they are legally entitled and access costs and attorney fees to prosecute this

action allowable by statute and law.

V.      Order whatever other or further relief the Court deems necessary under the

circumstances.

VI.     Certify the Class as defined in this complaint and Certify the two named

Plaintiffs as class representative.

## CLASS ALLEGATIONS UNDER MCL § 445.911(4)

90.     Plaintiffs repeat and  re-allege all prior paragraphs as if fully set forth herein.

91.     Plaintiffs bring this claim on behalf of a class.

92.     The class consists of all individuals within the state of Michigan who entered

into loan agreements with Defendants who were induced to refinance with

Defendants at any time date between six years prior to the filing of this action.

93.     The class is so numerous that joinder of all members is not practical.

94.     The common scheme and questions of law are common to the class members

and common questions predominate over any questions relating to individual class

members.

95.     The claims of the representative parties are typical of the class and are aligned

with and fairly represent the claims of the class they seek to represent.

WHEREFORE, Plaintiffs on behalf of themselves and others similarly situated requests the Court to:

I.      Enter a judgement declaring Defendants actions unlawful under MCL 445.901, *et seq*.

II.     Enjoin the Defendants from engaging in the deceptive practice alleged;

III.    Order a disgorgement of any profits gained as a result of Defendant's violations under the Michigan Consumer Protection Act;

IV.     Order Defendants to pay Plaintiffs and all other persons damages to which they are legally entitled and access costs and attorney fees to prosecute this action allowable by statute and law.

V.      Order whatever other or further relief the Court deems necessary under the circumstances.

VI.     Certify the Class as defined in this complaint and Certify the two named Plaintiffs as class representative.

JURY DEMAND

For those claims so triable, Plaintiffs request a jury.

Dated:      4/17/24

Respectfully Submitted:
/s/ *Sean R. O'Mara*   (P76140)
Sean R. O'Mara
Attorney for Plaintiffs

## CERTIFICATE SERVICE

Sean R. O'Mara, affirms that he is an attorney and that on April 17, 2024 he electronically filed the foregoing document with all attachments with the Clerk of the Court using the MIFILE system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

*Respectfully Submitted*:

**O'Mara Law Firm PC**

By:  /s/Sean R. O'Mara
Sean R. O'Mara (P76140)